**FILED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** **(In Chambers) Order re:** Joint Supplemental Memorandum of Points and Authorities in Support of Motions for Summary Judgment on Functionality [Dkt. 144]

This matter is before us on the Parties' supplemental briefing, [Dkt. 144], on their Motions for Summary Judgment, [Dkt. 93]. We have considered the papers filed in support of and in opposition to this Motion and deem the matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.     Background**

**A.     Factual Background**

Plaintiff Moldex-Metric, Inc. ("Moldex" or "Plaintiff") is an ear plug manufacturer that has produced ear plugs in a bright green color since 1982. (Statement of Uncontroverted Facts ("SUF") P1-P2). Moldex alleges that it has continuously used this color (the "Green Color Mark") to "identify its earplugs and to distinguish its earplug products from those made and sold by others." [Dkt. 57 ("SAC") ¶ 6.] Moldex "sells disposable earplugs bearing the Green Color Mark under the name 'Pura-Fit[].'" (*Id.*)

Defendant McKeon Products, Inc. ("McKeon" or "Defendant") also sells ear plugs and, in 2009, began selling "Snoreblocker" ear plugs in a bright green color. (SUF P7-P8.) Moldex asserts that McKeon "chose to use a mark and trade dress confusingly similar to [Moldex's] earplugs . . . in order to trade on [Moldex's] goodwill by confusing the marketplace into believing that their hearing protection line is manufactured by, affiliated with or sponsored by [Moldex]." (SAC ¶ 12.) Pursuant to these allegations, Moldex brings claims against McKeon for federal and state trademark infringement, federal and state trademark dilution, and unfair competition. Moldex's claims all depend on the validity of the Green Color Mark.

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

**B.     Procedural Background**

The Parties filed cross motions for summary judgment on October 1, 2012.  [Dkt. 93.]  McKeon moved for summary judgment on the grounds that (1) the Green Color Mark is functional, (2) Moldex had failed to show secondary meaning, and (3) Moldex had failed to establish likelihood of confusion.  [*Id.*]  Moldex moved for partial summary judgment on the ground that the Green Color Mark is not functional.  [*Id.*]  On February 14, 2013, we denied Moldex's motion and granted McKeon's motion.  [*See* Dkt. 113 ("Summ. J. Order").]  Specifically, we concluded that Moldex failed to raise a triable issue "as to any of the functionality factors" set forth in *Disc Golf Association, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998).  (*Id.* at 10.)  We entered judgment in McKeon's favor, dismissing all of Moldex's claims with prejudice.  [Dkt. 114.]

Moldex appealed our summary judgment order on March 14, 2013.  [Dkt. 121.]  The Ninth Circuit entered judgment on March 6, 2015, vacating and reversing our judgment against Moldex.  [*See* Dkt. 125]; *see also Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 596 F. App'x 567 (9th Cir. Mar. 6, 2015).  The circuit issued a formal mandate on April 1, 2015.  [Dkt. 126.]  In its disposition, the Ninth Circuit stated that we erred by not properly addressing essentiality when we analyzed the functionality of the Green Color Mark.  *Moldex*, 596 F. App'x at 567.  The circuit suggested that we "rigidly appl[ied]" the "nonexclusive factors described in [*Disc Golf*]" and "ignore[d] *Qualitex*'s focus on essentiality."  *Id.* at 567-68.  The circuit remanded the action, deciding to "leave it to the district court to assess functionality in light of *Qualitex* in the first instance."  *Id.* at 568.

Upon remand, we directed the Parties to file a joint brief addressing the essentiality of the Green Color Mark's green color "as explained in *Qualitex Co. v. Jacobsen Products Co.*, 514 U.S. 159 (1995)."  [Dkt. 143.]  The Parties have submitted their briefing.  This Motion is now ready for decision.

**II.     Legal Standard**

We may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the district court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.

The moving party bears the initial responsibility to point to the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party has the burden of proof at trial, the moving party can carry its initial burden either by submitting affirmative evidence that there is not a triable, factual dispute or by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.  The burden then shifts to the nonmoving party "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 324).  This means that the evidence is such that "a

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Anderson*, 477 U.S. at 252). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (internal quotation marks omitted). If the moving party meets its initial burden of demonstrating that summary judgment is proper, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial*" in order to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in the original) (internal quotation marks omitted).

**III.   Analysis**

    **A.   Consideration of the *Disc Golf* Factors**

We fully adopt our analysis of functionality under the *Disc Golf* factors as set forth in our February 14, 2013 order. (*See* Summ. J. Order.) In its *Moldex* disposition, the Ninth Circuit stated that the *Disc Golf* factors were "nonexclusive" and should not be rigidly applied, but also noted that these factors are "legitimate considerations that this circuit typically considers." *See* 596 F. App'x at 567-68 (internal quotation marks and citations omitted). The court did not fault our analysis of the *Disc Golf* factors themselves, but instead disagreed with our conclusion that these factors were dispositve. *See id.* Thus, while the *Disc Golf* factors are not independently dispositive of the Green Color Mark's functionality, they still inform our analysis of this issue. With this consideration in mind, we will proceed to "assess [the] functionality" of the Green Color Mark "in light of *Qualitex*," as directed by the Ninth Circuit. *Id.* at 568. We will take special care to "address[] essentiality when analyzing the functionality" of the Green Color Mark. *Id.* at 567.

    **B.   Essentiality Under *Qualitex***

In *Qualitex*, the Supreme Court addressed whether the Lanham Act permitted the registration of a trademark consisting purely of a color. 514 U.S. at 160-61. Specific to the case before the Court was whether the green-gold color of dry cleaning press pads could receive trademark protection, or if the color was functional, and thus not trademarkable. *See id.* The Court outlined the basic standard for functionality, stating that "'[i]n general terms, a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Id.* at 165 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982)). Applying this standard to the green-gold color at issue, the Court explained that the color "acts as a symbol" to "identif[y] the press pads' source," and that it served "no other function." *Id.* at 166. While "it is important to use some color on press pads to avoid noticeable stains," there was "no competitive need in the press pad industry for the green-gold color, since other colors are equally usable." *Id.* (internal quotation marks and emphasis omitted). Accordingly, the Court concluded that the green-gold color was protectable as a trademark. *Id.*

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

In *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), the Court elaborated on the *Qualitex* functionality analysis, explaining that "whether the particular product configuration is a competitive necessity" was "incorrect as a comprehensive definition" of functionality under *Qualitex*. *Id.* at 32-33. *Qualitex* did not "purport to displace th[e] traditional rule" of *Inwood* that a product feature is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Id.* at 33. "It is proper to inquire into a 'significant non-reputation-related disadvantage' in cases of [a]esthetic functionality, the question involved in *Qualitex*." *Id.* "Where the design is functional under the *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature." *Id.* "In *Qualitex*, by contrast, [a]esthetic functionality was the central question, there having been no indication that the green-gold color of the laundry press pad had any bearing on the use or purpose of the product or its cost or quality." *Id.*

The Court applied these principles to the issue at hand: whether a visible dual-spring mechanism on the base of road signs was functional. *Id.* at 25-26. The Court stated that "strong evidence of functionality" existed because the dual-spring design was claimed by expired utility patents. *Id.* at 30-31. Moreover, "beyond serving the purpose of informing consumers that the sign stands are made by [Respondent] (assuming it does so), the dual-spring design provides a unique and useful mechanism to resist the force of the wind." *Id.* at 33. Thus, the dual-spring design was not trademarkable.

The Court declined to engage "in speculation about other design possibilities, such as using three or four springs which might serve the same purpose." *Id.* "[T]he functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used." *Id.* at 33-34. "The dual-spring design is not an arbitrary flourish in the configuration of [Respondent's] product; it is the reason the device works." *Id.* at 34. Thus, "[o]ther designs need not be attempted." *Id.*

We interpret *Qualitex* and *TrafFix* to mean that, under the *Inwood* test, a product feature is "essential" to the use or purpose of a product if the feature contains an attribute that contributes to the intended operation of that particular product in a significant way. Or, in the words of the Second Circuit, "[a] feature is essential if it is dictated by the functions to be performed by the article." *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012) (internal quotation marks and alterations omitted). Under this standard of essentiality, if the product feature is essential to the particular product at issue, there is no need to inquire further if the feature is essential to all products of its type.

We also conclude—as the Court did in *TrafFix*—that if a product feature is functional under the *Inwood* test, there is no need to inquire into alternative designs, or the competitive necessity, of the feature. *See TrafFix*, 532 U.S. at 33-34; *see also Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) ("After *Qualitex* and *TrafFix*, the test for functionality proceeds in two steps. In the first step, courts inquire whether the alleged 'significant non-trademark function' satisfies the *Inwood Laboratories* definition of functionality—'essential to the use or purpose of the article [or] affects [its] cost or quality.' If this is the case, the inquiry is over—the feature is functional and not protected." (internal citation omitted)).

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

### C.  Essentiality of the Green Color Mark

Under the above-articulated standard, Moldex has failed to raise a triable issue as to whether the Green Color Mark is essential to the use or purpose of its ear plugs.  As we noted in our prior summary judgment order, Moldex's own evidence shows that the Green Color Mark's color is "necessarily better in conspicuity and visibility than several, if not most, other colors."  (Summ. J. Order at 10.)  Such evidence shows that the Green Color Mark's color has an inherent attribute—its increased visibility—that contributes to an aspect of the intended operation of Moldex's ear plugs—to facilitate compliance checks.  The evidence also shows that this contribution is significant to the ear plugs' operation, as Moldex specifically markets the benefits of the ear plugs' visibility to consumers.  (*See id.* ("Plaintiff does not dispute that its print advertisements have specifically touted the utilitarian advantage of the 'bright green color' in facilitating compliance checks.").)  In sum, by virtue of the Green Color Mark being the color it is, Moldex's ear plugs work as they are supposed to.  The Green Color Mark's color is thus "not an arbitrary flourish in the configuration of [Moldex's ear plugs]" but is one of the reasons "the [ear plugs] work[]."  *See TrafFix*, 532 U.S. at 34.

That some other colors—such as bright yellow or bright orange—may possess the same beneficial visibility attributes that make the Green Color Mark essential to Moldex's ear plugs does not defeat that essentiality.  The Green Color Mark's color still contains an enhanced visibility attribute that not *all* other colors have.  This attribute significantly contributes to the ear plugs' operation, allowing them to work as intended.  This holds true even if some other colors might also provide similar enhanced visibility.  Thus, the essentiality of the Green Color Mark's green to Moldex's ear plugs exists regardless of the existence or non-existence of design alternatives.  *See id.* at 33-34.[1]

To the extent Moldex argues that the Green Color Mark is not essential to its ear plugs because it does not affect the ear plugs' ability to block sound, we reject this argument for the same reasons

---

[1] Moreover, to the extent that Moldex argues that this is an aesthetic functionality case, such classification is immaterial to our analysis.  The *Inwood* test applies equally to aesthetically functional features as it does to non-aesthetically functional features.  *See Au-Tomotive Gold*, 457 F.3d at 1072.  If a court reasons that "the alleged 'significant non-trademark function' satisfies the *Inwood Laboratories* definition of functionality—'essential to the use or purpose of the article [or] affects [its] cost or quality,'" then "the inquiry is over—the feature is functional and not protected."  *Id.*  A court only proceeds to test aesthetic functionality—asking "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage"—if the court concludes that the feature is not otherwise functional under the traditional *Inwood* test.  *Id.*; *see also TrafFix*, 532 U.S. at 33 ("It is proper to inquire into a 'significant non-reputation-related disadvantage' in cases of [a]esthetic functionality, the question involved in *Qualitex*.  Where the design is functional under the *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature.").

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

explained in our February 14, 2013 order.  (*See* Summ. J. Order at 4.)  Moldex's argument that the Green Color Mark does not affect the cost or quality of its ear plugs is irrelevant inasmuch as we conclude that the Green Color Mark is essential to the use or purpose of the ear plugs.  (*See supra* p. 5.)  Finally, for the reasons set forth above, we reject Moldex's argument that the Green Color Mark is not functional because there are equivalent or possibly superior colors available for other manufacturers to use for ear plugs.  (*See id.*)

Accordingly, Moldex has failed to raise a triable issue as to essentiality, and therefore functionality.  McKeon is entitled to judgment as a matter of law that the Green Color Mark is functional and therefore is not protectable.[2]

Our conclusion is consistent with the outcomes in both *TrafFix* and *Qualitex*.  Like the dual-spring design in *TrafFix*, the Green Color Mark "provides a unique and useful mechanism" to improve the operation of the relevant product.  *See id.* at 33.  In *TrafFix* this mechanism was resisting the force of the wind.  In the present case it is increasing the visibility of the ear plugs for compliance checks.  As in *TrafFix*, there is "no need" to speculate "about other design possibilities, such as using three or four springs"—or in this case other bright colors—"which might serve the same purpose."  *Id.*  "[T]he functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used."  *Id.* at 33-34.  All in all, both the dual-spring design and the Green Color Mark are "not [] arbitrary flourish[es] in the configuration of [the] product[s]; [they are] the reason the device[s] work[]."  *Id.* at 34.  Thus,  like the dual-spring design in *TrafFix*, the Green Color Mark is functional.

*Qualitex*, on the other hand, is distinguishable.  Like the Green Color Mark, the green-gold color in *Qualitex* served a purpose in the pertinent product: avoiding "noticeable stains."  *Qualitex*, 514 U.S. at 166.  The Court noted, however, that "other colors are equally usable" for this purpose.  *Id.*  Thus, while the press pads needed *some* color to satisfy this function, there was nothing about this particular green-gold color that made it better suited than any other color in performing this function.  Put differently, while color itself provided a functional benefit for the press pads, this particular green-gold color added nothing to the operation of the product other than simply being a color.  The present case is different.  As explained above, the Green Color Mark itself—by virtue of being not just a color, but *the particular color it is*—improves the product's functionality.  Not any color will suffice—the Green Color Mark's visibility attributes are superior to many if not most other colors.  Thus, unlike the green-

---

[2] We are cognizant of the Ninth Circuit's "doubt" that "summary judgment on functionality grounds would be appropriate in this case."  *Moldex*, 596 F. App'x at 568.  This of course would be true if there were triable factual issues that animate the essentiality/functionality analysis.  Instead, our resolution of this threshold functionality question turns on interpretation and application of case law rather than disputed factual issues.  Summary judgment in McKeon's favor is appropriate given the record before us.  Here, Moldex has presented no evidence that a trier of fact could base a finding of non-essentiality, and therefore non-functionality.

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1742-GHK (AGRx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Moldex-Metric, Inc. v. McKeon Products, Inc.* | | |

gold color in *Qualitex*, the Green Color Mark serves a function other than merely "identif[ing] the [ear plugs'] source." *See id.* It adds a benefit to the ear plugs' operation that certain other colors would not add. Accordingly, the Green Color Mark is essential to the use and purpose of Moldex's ear plugs and not properly trademarkable.

**IV.    Conclusion**

In light of the foregoing, McKeon's Motion for Summary Judgment on functionality is **GRANTED**.[3]

**IT IS SO ORDERED.**

:

Initials of Deputy Clerk       DG for Bea

---

[3] Because Moldex has failed to raise a triable issue as to functionality, we conclude that Moldex has also failed to come forward with evidence that, if uncontroverted, would entitle it to a directed verdict as to functionality. Accordingly, Moldex's Motion for Partial Summary Judgment on functionality is **DENIED**.

Additionally, because we grant McKeon's Motion on functionality, we do not reach the issues of secondary meaning or likelihood of confusion.